**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARIA LOUISE ZINGALE, | ) | CASE NO. 1:23-CV-01503-SL |
| Plaintiff, | ) | |
| | ) | U.S. DISTRICT JUDGE |
| | ) | SARA LIOI |
| v. | ) | |
| | ) | U.S. MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL | ) | JENNIFER DOWDELL ARMSTRONG |
| SECURITY, | ) | |
| | ) | |
| Defendant, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.      INTRODUCTION

Plaintiff, Maria Louise Zingale ("Ms. Zingale"), seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner")[1] denying her application for Disability Insurance Benefits ("DIB"). (ECF No. 1.) This matter is before me pursuant to 42 U.S.C. §§ 405(g) and Local Rule 72.2(b). (*See* ECF non-document entry dated August 2, 2023). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

## II.      PROCEDURAL HISTORY

On February 27, 2018, Ms. Zingale filed an application for DIB, alleging a disability onset date of April 24, 2015. (Tr. 72.)[2] Ms. Zingale's claim proceeded to a hearing and was denied in a written decision on October 3, 2019. (Tr. 72-81.) The Appeals Council denied Ms. Zingale's request for review, and Ms. Zingale sought review of the ALJ's decision from the U.S. District

---

[1] On December 20, 2023, Martin O'Malley became the Commissioner of Social Security.

[2] The administrative transcript ("Tr.") appears at ECF No. 5 on CM/ECF. All page number references to the administrative transcript herein are to the Bates numbers on the bottom right-hand corner. All other record references are to the electronically stamped CM/ECF document ("ECF No.") and PageID# rather than any internal pagination.

Court for the Northern District of Ohio. (Tr. 86, 102.) On March 18, 2022, the U.S. District Court for the Northern District of Ohio affirmed the Commissioner's decision that Ms. Zingale was not disabled. (Tr. 102-36.)

While the case was pending, Ms. Zingale filed another application for DIB, alleging a disability onset date of October 14, 2019. (Tr. 71-82, 243-44.) Her application related to depression, primary biliary cholangitis ("PBC"),[3] autoimmune hepatitis, vocal cord paralysis, and PTSD. (Tr. 265.) The ALJ's decision also found Ms. Zingale's cirrhotic liver, PBC, and hypothyroidism were severe impairments. (Tr. 20.) Ms. Zingale's application was denied initially and upon reconsideration. (Tr. 141-45, 147-51.) An administrative law judge ("ALJ") held an administrative hearing on October 13, 2022, where Ms. Zingale, represented by counsel, and a vocational expert ("VE") testified. (Tr. 44-68.) The ALJ issued a written decision on October 24, 2022, finding that Ms. Zingale was not disabled within the meaning of the Social Security Act. (Tr. 17-37.) The Commissioner's decision became final when the Appeals Council declined further review on June 5, 2023. (Tr. 1-3.)

On August 2, 2023, Ms. Zingale filed a Complaint challenging the Commissioner's final decision. (ECF No. 1.) Ms. Zingale raises four assignments of error:

(1) The ALJ failed to support his RFC with substantial evidence when he applied the wrong standard of review by adopting the findings of the prior Administrative Law Judge.

(2) The ALJ erred when he improperly assessed the opinions of the treating sources and failed to support his conclusions with substantial evidence.

(3) The ALJ committed harmful error when his RFC failed to include limitations related to Plaintiff's fatigue and anxiety.

---

[3] Primary biliary cholangitis is a chronic and progressive liver disease that causes inflammation and, eventually, the destruction of the destruction of the bile ducts that run through one's liver. *See Primary Biliary Cholangitis (PBC)*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/17715-primary-biliary-cholangitis-pbc (last visited June 12, 2024).

(4) At Step Four of the Sequential Evaluation, the ALJ's RFC finding that Plaintiff could perform her past relevant work was not supported by substantial evidence.

(ECF No. 6, PageID#2236.)

## III.    BACKGROUND

### A.  Personal, Educational, and Vocational Information

Ms. Zingale was born in 1964, and she lives with her husband. (Tr. 50-51.) She has a driver's license. (Tr. 51.) She has a GED and did not complete any type of specialized job training, trade school, or vocational school. (Tr. 51, 60.) Her past relevant work was employment as a foreign clerk. (Tr. 37.)

### B.  Relevant Non-Medical/Medical Opinion Evidence

#### 1.  *State Agency Findings*

##### a.  Psychological Consultants

Ermias Seleshi, M.D., reviewed the record at the initial level of consideration on November 19, 2020. Dr. Seleshi opined that that Ms. Zingale had no medically determinable mental impairments prior to the date last insured, due to insufficient evidence. (Tr. 95.) Paul Tangeman, Ph.D., reviewed the record at the reconsideration level on February 18, 2021. Dr. Tangeman gave the same opinion. (Tr. 100.) Dr. Tangeman also indicated that he was not adopting the prior unfavorable ALJ decision because Ms. Zingale still had an active appeal to the U.S. District Court for the Northern District of Ohio; therefore, the prior unfavorable decision was not considered final at the time of Dr. Tangeman's review. (*Id.*)

##### b.  Medical Consultants

Diane Manos, M.D., reviewed the record at the initial level of consideration on November 16, 2020. Dr. Manos opined that there was insufficient evidence prior to the date last insured to

determine Ms. Zingale's remaining abilities in functional terms. (Tr. 94-95.) Leslie Green, M.D., reviewed the record at the reconsideration level on February 17, 2021. Dr Green gave the same opinion. (Tr. 99.) Furthermore, Dr. Green specifically indicated that she was not adopting the prior unfavorable ALJ decision because Ms. Zingale still had a pending appeal to the U.S. District Court for the Northern District of Ohio. (*Id.*) Therefore, Dr. Green acknowledged that the prior unfavorable decision was not considered final at the time of Dr. Green's opinions. (*Id.*)

### 2. *Dane Genther, MD, FACS*

Dr. Genther, a plastic surgeon, wrote a letter on Ms. Zingale's behalf on July 15, 2021, 18 months after the date last insured. (Tr. 636.) Dr. Genther indicated that a dog bit Ms. Zingale on the right side of her face in September 2019, which required two surgeries up to that point to reconstruct her right cheek and upper lip. (*Id.*) Dr. Genther also indicated that Ms. Zingale had permanent numbness of her right medial cheek and upper lip due to this injury. (*Id.*)

### 3. *Anthony Post, MD*

On August 11, 2021 –18 months after the date last insured – Dr. Post, a gastroenterologist, noted in Ms. Zingale's treatment notes that Ms. Zingale had a disability placard and stated Ms. Zingala was "severely limited in [her] ability to walk [200] feet without stopping to rest." (Tr. 1132, 1136.) Dr. Post opined that Ms. Zingale's disability was expected to last for five years. (Tr. 1132, 1136.)

On August 19, 2021, Dr. Post completed a Gastroenterology Medical Source Statement for Ms. Zingale. (Tr. 1138-41.) Dr. Post indicated that he had been treating Ms. Zingale since June 2017 for PBC, autoimmune hepatitis, and cirrhosis. (Tr. 1138.) Dr. Post did not opine on Ms. Zingale's prognosis. (*Id.*) However, Dr. Post noted that Ms. Zingale's symptoms were episodic and unpredictable, and the symptoms could cause periods of incapacity when they occur. (*Id.*) Dr.

Post noted that Ms. Zingale's symptoms could include excessive fatigue, weakness, limitation, in her ability to walk, leg cramps, chronic itching, difficulty standing for long periods of time, and trouble concentrating. (*Id.*) Dr. Post stated that emotional factors contributed to the severity of Ms. Zingale's symptoms and functional limitations, including anxiety. (Tr. 1139.)

Dr. Post opined that, at one time, Ms. Zingale was severely limited in her ability to walk 200 feet without stopping; she could sit for one hour; and she could stand for one hour. (*Id.*) Dr. Post also opined that in an eight-hour workday, Ms. Zingale could sit for about two hours and stand and/or walk for less than two hours. (*Id.*) Dr. Post opined that Ms. Zingale would need a job that would allow her to shift positions at will from sitting, standing, or walking. (*Id.*) Dr. Post also opined that Ms. Zingale would sometimes need unscheduled work breaks, lasting 20 minutes, with only 10 minutes advance notice of the need for a break. (Tr. 1140.) Dr. Post further opined that Ms. Zingale would need to lie down or rest at unpredictable intervals once a day; however, he did not say for how long. (*Id.*) Dr. Post opined that Ms. Zingale could lift and/or carry rarely less than 10 pound and never 20 pounds or more; rarely twist, stoop/bend, crouch/squat, and climb stairs; and never climb ladders. (*Id.*) Finally, Dr. Post opined that Ms. Zingale would be off task 15 percent of the workday; could tolerate low stress work; would have good days and bad days; and would be absent from work about one day per month. (*Id.*)

On March 2, 2022, Dr. Post indicated in Ms. Zingale's treatment notes that Ms. Zingale had a disabled parking placard, and she was severely limited in her ability to walk 200 feet without stopping to rest. (Tr. 1833.) Dr. Post also noted that Ms. Zingale's disability was expected to last for five years. (*Id.*)

Dr. Post completed another Gastroenterology Medical Source Statement on September 14, 2022, three years after the date last insured. (Tr. 1837-40.) Dr. Post indicated that Ms. Zingale had

a fair prognosis. (Tr. 1837.) Dr. Post noted that Ms. Zingale's symptom of gastrointestinal bleeding from esophageal varices was episodic. (*Id.*) Dr. Post noted that Ms. Zingale had emotional factors that contributed to the severity of her symptoms and functional limitations, including anxiety. (Tr. 1838.)

Dr. Post opined that, at one time, Ms. Zingale could walk only one city block; sit for 30 minutes; and stand for 10 minutes. (*Id.*) Dr. Post also opined that in an eight-hour workday, Ms. Zingale could sit for two hours and stand and/or walk for less than two hours. (*Id.*) Dr. Post further opined that Ms. Zingale would need a job that would allow her the opportunity to shift positions at will from sitting, standing, or walking; and she would need a job that would permit ready access to a restroom. (*Id.*) Dr. Post indicated that Ms. Zingale would need unscheduled work breaks one to three times per day for 10 minutes, and she would be able to provide only one minute advance notice of her need for a restroom break. (Tr. 1838-39.) Dr. Post opined that Ms. Zingale could rarely lift and/or carry 10 pounds, and less than 10 pounds, but never more than 10 pounds. (Tr. 1839.) Dr. Post also opined that Ms. Post could rarely twist; rarely stoop/bend; and never crouch/squat or climb ladders or stairs. (*Id.*) Dr. Post further opined that Ms. Zingale would be off task 20 percent of the workday; was capable of low stress work; would have good and bad days; and would be absent from work about two days per month. (*Id.*) Finally, Dr. Post noted that Ms. Zingale might need to be listed for a liver transplant within the next year due to weakness and fatigue from anemia. (Tr. 1840.)

#### 4.  *Kevin Leisinger, MD*

On June 12, 2019, Dr. Leisinger indicated that Ms. Zingale had biliary cirrhosis, chronic hepatitis, hypothyroidism, and chronic fatigue. (Tr. 442.) Dr. Leisinger also indicated that Ms. Zingale's chronic medical conditions required periodic care through the year with specialty visits

and primary care visits. (*Id.*) Dr Leisinger also noted that Ms. Zingale's liver dysfunction left her very fatigued, with symptoms such as leg edema, occasional ascites, and abdominal bloating that could preclude her from other lines of work. (*Id.*) On October 18, 2019, Dr Leisinger instructed Ms. Zingale not to drive for two weeks after her motor vehicle accident to ensure that her symptoms did not recur. (Tr. 425.)

Finally, Dr. Leisinger completed a Physical Medical Source Statement on September 27, 2022. (Tr. 2205-08.) Dr. Leisinger gave Ms. Zingale a fair prognosis. (Tr. 2205.) Dr. Leisinger opined that at one time Ms. Zingale could sit for 30 minutes and stand for 10 minutes. (Tr. 2206.) Dr. Leisinger opined that in an eight-hour workday Ms. Zingale could sit for less than two hours and stand and/or walk for less than two hours. (*Id.*) Dr. Leisinger opined that Ms. Zingale would need periods of walking around during an eight-hour workday, every 30 minutes, for five minutes. (*Id.*) Dr. Leisinger also opined that Ms. Zingale would need unscheduled work breaks every hour, for 5 to 10 minutes (*Id.*) Dr. Leisinger opined that Ms. Zingale did not require the use of a cane or any other handheld assistive devices. (Tr. 2207.) Dr. Leisinger further opined that Ms. Zingale could rarely lift and/or carry less than 10 pounds; and never more than 10 pounds. (*Id.*) Dr. Leisinger opined that Ms. Zingale could only bilaterally finger and handle 10 percent of the workday and bilaterally reach, including overhead, 5 percent of the workday. (*Id.*) Furthermore, Dr. Leisinger opined that Ms. Zingale would be off task 25 percent or more of the workday. (*Id.*) Finally, Dr. Leisinger indicated "N/A" when asked about absenteeism. (Tr. 2208.)

## C. **Relevant Medical Evidence**

### 1. *Evidence that Pertained to the Prior Period*

Ms. Zingale saw Anthony Post, M.D., a gastroenterologist, on March 15, 2019, for abdominal cramping associated with a previous surgery. (Tr. 374-76.) She was alert, oriented, and

in no acute distress; she had no scleral icterus or jaundice. (Tr. 375.) Ms. Zingale's abdomen was soft and nontender. (*Id.*) She had normal bowel sounds, and no hepatosplenomegaly or ascites. (*Id.*) She had mild tenderness at the right upper quadrant, under her drain site. (*Id.*) Dr. Post diagnosed Ms. Zingale with liver cirrhosis and primary biliary cholangitis and advised her to return in six months. (Tr. 375-76.)

Ms. Zingale received routine treatment from Kevin J. Leisinger, M.D., during this period. (Tr. 442-43.) On June 12, 2019, Dr. Leisinger noted that Ms. Zingale was alert, oriented times three, and in no apparent distress. (Tr. 443.) Dr. Leisinger also noted that Ms. Zingale was pleasant, cooperative, well-hydrated, and had a nontoxic appearance. (*Id.*) Dr. Leisinger assessed Ms. Zingale with biliary cirrhosis, chronic hepatitis, hypothyroidism, and chronic fatigue. (*Id.*) He noted that Ms. Zingale had several chronic medical conditions that could preclude many lines of work and also required periodic care throughout the year with specialty and primary care physician visits. (*Id.*)

Ms. Zingale met with Dr. Post on September 25, 2019. (Tr. 367-69.) Dr. Post noted that Ms. Zingale was "doing well," and her renal function was good. (Tr. 367, 369.) Dr. Post also noted that Ms. Zingale's liver tests were "much better." (Tr. 367.) Ms. Zingale's physical examination findings at this appointment were similar to the findings from the March 2019 appointment. (Tr. 368, 375.)

### 2.  *Evidence that Pertained to the Relevant Period*

After a dog bit Ms. Zingale on the right side of her face on September 30, 2019 (*see* Tr. 434), Ms. Zingale established care with Dane Genther, M.D., a plastic surgeon, and underwent surgery on October 9, 2019. (Tr. 430-33.) She had a post-operative visit with Dr. Genther on October 15, 2019. (Tr. 425-26.) Dr. Genther noted that Ms. Zingale was "[d]oing well with no

significant concerns since surgery." (Tr. 426.) Dr. Genther wrote that Ms. Zingale's pain was under control and that she denied symptoms of infection. (*Id.*)

On October 18, 2019, Ms. Zingale attended a follow-up appointment with Dr. Leisinger. (Tr. 423-24.) Ms. Zingale reported that she passed out while driving and ran a stop sign on October 17, 2019. (Tr. 423.) The physical examination revealed that Ms. Zingale was in no acute distress, with a normal abdominal examination, normal gait, and intact sensation. (Tr. 424.) Dr. Leisinger instructed Ms. Zingale not to drive for two weeks to ensure she did not pass out again. (Tr. 425.)

On December 5, 2019, Ms. Zingale told Dr. Genther that her pain was controlled, but she had some residual numbness in her cheek, and tightness in her lip. (Tr. 418.)

There are no medical records from Dr. Post, Ms. Zingale's gastroenterologist, during the relevant period. (Tr. 364-76.)

At an appointment on November 8, 2019, Ms. Zingale denied symptoms of malaise or fatigue. (Tr. 419.) On December 10, 2019, Ms. Zingale reported that her symptoms of general malaise and fatigue were improved. (Tr. 415.)

### 3. *Evidence that Post-Dated the Date Last Insured*

On January 16, 2020, Ms. Zingale met with Dr. Genther for a follow-up appointment regarding her facial surgery after the dog attack. Dr. Genther noted that Ms. Zingale was doing well overall, although she had some right cheek and incision pain, as well as right upper lip tightness. (Tr. 410.)

That same day, Ms. Zingale met with Dr. Leisinger for a follow-up appointment regarding anxiety. (Tr. 410.) Dr. Leisinger noted that in 2019 Ms. Zingale had been in a severe car accident and was also attacked by a dog. He noted that Ms. Zingale still has daily anxiousness, panic attacks, and nervousness about driving a car and being around dogs. (*Id.*) Ms. Zingale reported she was

9

open to counseling for PTSD. (*Id.*) Dr. Leisinger noted that Xanax was helping, but also indicated that Ms. Zingale reported feeling that she needed to take her medication twice a day in order to manage her symptoms. (*Id.*) She reported no side effects. (Tr. 410-11.)

On May 11, 2020, Ms. Zingale told Dr. Genther that she had no significant concerns since her surgery. (Tr. 394.) She said her pain was under control, and she was happy with the results of the surgery. (*Id.*)

On June 4, 2020, Ms. Zingale attended a virtual follow-up appointment relating to her anxiety. (Tr. 388.) Ms. Zingale reported that her medical provider increased her Xanax dosage in January 2020. (*Id.*) She reported that she did not always need to take the Xanax twice a day but typically uses it at least once per day. (*Id.*) She reported that she had a fear of driving, though she she still does some driving. (*Id.*) She reported increased anxiety about the COVID-19 pandemic given her history of autoimmune disease and pancytopenia. (*Id.*) She stated that she was handling her heightened anxiety well at that time. (*Id.*)

Ms. Zingale attended a telehealth appointment with Dr. Post on June 25, 2020. (Tr. 364-66.) She told Dr. Post a dog bit her in late 2019, and she had several surgeries as a result. (Tr. 365.) Dr. Post noted that Ms. Zingale was "doing well" regarding her "overlap syndrome with cirrhosis." (Tr. 364.) Because it was a telehealth appointment, there were no physical examination findings corresponding with the treatment notes. (Tr. 366.)

On July 28, 2020, Ms. Zingale returned to Dr. Genther for a follow-up appointment. (Tr. 387.) She reported "no significant concerns since the surgery." (*Id.*) Dr. Genther noted that Ms. Zingale's pain was under control. (*Id.*)

Ms. Zingale met with Dr. Leisinger on September 4, 2020, approximately one year after the dog attack,. (*Id.*) Dr. Leisinger noted that Ms. Zingale's face "looks outstanding," and she had

healed very nicely with extremely minimal scarring or asymmetries. (Tr. 385.) Ms. Zingale said she was happy with her progress. (*Id.*) On December 17, 2020, Ms. Zingale reported that her chronic fatigue symptoms were unchanged. (Tr. 540.)

On July 15, 2021, Dr. Genther wrote a letter regarding Ms. Zingale's dog bite injury. A summary of this letter is located in the "Non-Medical/Medical Opinions" section of this Report and Recommendation.

Ms. Zingale met with Dr. Post on August 11, 2021, approximately 18 months after the date last insured. (Tr. 1132.) Dr. Post noted that Ms. Zingale had a disability placard, indicating that Ms. Zingale was severely limited in her ability to walk 200 feet without stopping to rest. (Tr. 1133.) Dr. Post also noted that Ms. Zingale's disability was expected to last for five years (*Id.*) On examination, Ms. Zingale was alert, oriented, in no acute distress, and had no scleral icterus or jaundice. (*Id.*) Her abdomen was soft and non-tender. She had normal bowel sounds, and no hepatosplenomegaly or ascites. (*Id.*) She had no edema. (*Id.*) She also had appropriate mood, with normal examination. (*Id.*)

Dr. Post completed a medical source statement for Ms. Zingale on August 19, 2021. A summary of this opinion is located at the "Non-Medical/Medical Opinions" section of this Report and Recommendation.

On March 2, 2022, Dr. Post indicated that Ms. Zingale had a disabled parking placard, and she was severely limited in her ability to walk 200 feet without stopping to rest. (Tr. 1833.) Dr. Post noted that Ms. Zingale's disability was expected to last for five years. (*Id.*) The physical examination from that date revealed that Ms. Zingale was alert and oriented with no scleral icterus and jaundice. (Tr. 1834.) She had supple neck without adenopathy or thyroidomegaly. (*Id.*) Her abdomen was soft and non-tender with normal bowel sounds, no hepatosplenomegaly, and no

ascites. (*Id.*) Her extremities had no peripheral edema. (*Id.*) She also had appropriate mood, with normal neurological examination. (*Id.*)

Dr. Post completed another medical source statement for Ms. Zingale on September 14, 2022. (Tr. 1837-40.) A complete summary of this opinion is located in the "Non-Medical/Medical Opinions" section of this Report and Recommendation.

Dr. Leisinger wrote a medical source statement on September 27, 2022. (Tr. 2205-08.) A complete summary of this opinion is located in the "Non-Medical/Medical Opinions" section of this Report and Recommendation.

### D.  Relevant Hearing Testimony and Statements

#### 1.  *Hearing arguments*

Ms. Zingale's counsel argued at the hearing that Ms. Zingale's mental health symptoms, including anxiety, worsened as a result of the October 2019 dog bite and motor vehicle accident. (Tr. 57-58, 66-67.) Ms. Zingale's counsel also argued that the evidence prior to the date last insured demonstrated that Ms. Zingale had significant fatigue and would be unable to sustain full time work. (Tr. 66-67.)

#### 2.  *Ms. Zingale's Testimony*

Ms. Zingale testified that she felt worse since her last hearing in July 2019, specifically during the three-month period between October to December 2019. (Tr. 53.) She stated that new issues occurred such as a diagnosis of Sjögren's syndrome,[4] a car accident, three surgeries to repair her face following the dog bite, her teeth falling out, and liver issues. (Tr. 53-54.) Regarding her Sjögren's syndrome, Ms. Zingale testified that she experiences mouth and eye dryness, uveitis,

---

[4] Sjögren's syndrome is an autoimmune disorder that makes one's glands produce less moisture than they should, typically causing chronic dryness in areas such as the eyes and mouth. *See Sjögren's Syndrome*, CLEVELAND CLINIC, https://my.clevelandclinic.org/health/diseases/4929-sjogrens-syndrome (last visited June 24, 2024).

light sensitivity, and joint swelling. (Tr. 54.) She stated that her liver causes her to be "foggy." (Tr. 55.)

Ms. Zingale testified that she has difficulty with concentration due to anxiety. (*Id.*) She treats her anxiety with Xanax and Celexa. (*Id.*) Ms. Zingale's medical provider doubled the dosage for Celexa, a depression medication after the dog bite. (*Id.*) Ms. Zingale also reported that she talks with her doctor every three months, and she also speaks with a friend who is a social worker when Ms. Zingale "[is] having a bad day." (Tr. 56.) She reported that her anxiety had increased since the dog bite on September 30, 2019. (Tr. 58.) She stated that she experiences "shaking" and panic attacks when she hears a dog barking. (*Id.*) She also reported having difficulty with concentration and focus. (Tr. 59.)

Ms. Zingale stated that between October 2019 to December 2019 she did not do household chores "the same as [she] used to." (Tr. 56.) She reported that she has trouble breathing due to her Sjogren's syndrome, and her husband helps her with chores involving heavy items. (*Id.*) Ms. Zingale stated that she does light cleaning. (*Id.*) Her medical conditions cause fatigue, which result in her taking naps because she is frequently tired and has difficulty getting out of bed in the morning. (*Id.*)

### 3. *Vocational Expert Testimony*

The ALJ asked the VE whether an individual with Ms. Zingale's age and education could perform work at the light exertional level if additionally limited to occasionally climbing ramps and stairs; never climbing ladders, ropes, or scaffolds; and frequently balancing, kneeling, crouching, and crawling. (Tr. 64.) The VE opined that the individual could perform Ms. Zingale's past relevant work as a foreign clerk. (Tr. 64-65.) The VE testified that his testimony was consistent with the *Dictionary of Occupational Titles*. (Tr. 65.)

Ms. Zingale's counsel asked if the same individual from the ALJ's hypothetical could perform work if also limited to simple, routine, and repetitive tasks. (*Id.*) The VE opined that this individual could not perform Ms. Zingale's past relevant work. (*Id.*) The VE also testified that this additional limitation would prevent the transferability of any skills acquired in Ms. Zingale's past work to unskilled work. (*Id.*)

Mr. Zingale's counsel then asked if the individual from the first hypothetical could perform work if she could only have occasional interaction with others. (*Id.*) The VE opined that this limitation would rule out Ms. Zingale's past relevant work. (*Id.*) Ms. Zingale's counsel next asked if the individual could perform work if this individual would be off task more than 15% of the workday. (Tr. 66.) The VE opined that this would be a work-preclusive limitation. (*Id.*) The VE also opined that an employer would only tolerate an employee being absent no more than one day per month. (*Id.*)

## IV.   ALJ DECISIONS

### A.   <u>October 2019 Decision</u>

On October 3, 2019, an ALJ issued a written decision, finding Ms. Zingale was not disabled within the meaning of the Social Security Act. (Tr. 72-81.) The ALJ found that Ms. Zingale had the residual functional capacity ("RFC") to perform work at the light exertional level except she could not climb ladders, ropes, or scaffolds; occasionally climb ramps and stairs; and frequently balance, kneel, crouch, and crawl. (Tr. 77.)

### B.   <u>October 2022 Decision</u>

On October 24, 2022, the ALJ issued a written decision. (Tr. 17-38.) The ALJ first found that Ms. Zingale last met the insured status requirements of the Social Security Act on December 31, 2019. (Tr. 20.) The ALJ then determined that Ms. Zingale did not engage in substantial gainful

activity during the period from her alleged disability onset date of October 14, 2019, through her date last insured of December 31, 2019. (*Id.*) The ALJ further determined that, through the date last insured, Ms. Zingale had the following severe impairments: cirrhotic liver; autoimmune hepatitis; primary biliary cholangitis; and hypothyroidism. (Tr. 20-24.) However, the ALJ found that none of these impairments—individually or in combination—met or medically equaled the severity of a listed impairment in 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 24.)

Because Ms. Zingale received a final decision on a prior disability claim, the ALJ considered whether there was new and material evidence that resulted in a change in her condition. (Tr. 17-18.) The ALJ found that the record did not establish new and material evidence pertaining to the current period that would justify finding a different RFC. (Tr. 27.) Therefore, the ALJ adopted the prior RFC determination and limited Ms. Zingale to work at the light exertional level, except that she can occasionally climb ramps and stairs; never climb, ladders, ropes, or scaffolds; and frequently balance, kneel, crouch, and crawl. (Tr. 24-37.) The ALJ also determined that, through the date last insured, Ms. Zingale was capable of performing her past relevant work as a foreign clerk. (Tr. 37.) The ALJ determined that this work did not require the performance of work-related activities precluded by Ms. Zingale's RFC. (*Id.*) Thus, the ALJ concluded that Ms. Zingale was not under a disability, as defined in the Social Security Act, from the alleged disability onset date through the date last insured. (*Id.*)

## V.     LAW AND ANALYSIS

### A.     <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott*

*v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip*, 25 F.3d at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.

2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original)).

### B. Standard for Disability

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id*.

### C. Analysis

#### 1. *The ALJ complied with* Drummond *and* Earley.

Ms. Zingale argues that the ALJ erred by misapplying the Sixth Circuit's *Drummond* decision in his evaluation of her impairments. Specifically, Ms. Zingale contends that the ALJ gave res judicata effect to a subsequent application that covered "a distinct period of time." (ECF No. 6, PageID#2242.) The Commissioner disagrees, contending that the ALJ correctly applied the

Sixth Circuit's refined expression of the *Drummond* standard, found in *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929 (6th Cir. 2018). (ECF No. 10, PageID#2274-76.) The Commissioner's argument is well-taken.

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit stated that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). However, in *Earley*, the Sixth Circuit clarified that *Drummond* should not be read to hold that an ALJ is always bound by a previous disability determination. 893 F.3d at 932. Rather, "[a]n individual may file a second application—for a new period of time—for all manner of reasons and obtain independent review of it so long as the claimant presents evidence of a change in condition or satisfies a new regulatory threshold." *Id.* The *Earley* court noted that "[f]resh review is not blind review. A later administrative law judge may consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.* at 934.

Although the ALJ here ultimately adopted the same RFC determination as the prior decision, the ALJ did so after reviewing the medical records post-dating the prior decision and finding that the records did not warrant a change from the previous decision.  The ALJ observed that Ms. Zingale's alleged onset date was October 14, 2019, and her date last insured was December 31, 2019. (Tr. 20.) Thus, as the ALJ stated, "there was essentially a three-month window that [Ms. Zingale] had to demonstrate new and material evidence, and a worsening of her impairments since the [October 3, 2019] prior unfavorable decision." (*Id.*) The ALJ explained that "the claimant's treatment for her severe medically determinable physical impairments remained unchanged during the period in question, compared to the prior period of adjudication." (*Id.*)

18

Specifically, the ALJ noted that Ms. Zingale did not have any gastroenterology treatment with Dr. Post during the period at issue. (Tr. 30; *see* Tr. 364-76.) Despite this lack of treatment, the ALJ considered the evidence from the prior period and explained that in September 2019, Dr. Post noted that Ms. Zingale was alert, oriented, and in no acute distress. (Tr. 30; *see* Tr. 368.) Ms. Zingale had no scleral icterus or jaundice; her abdomen was soft and non-tender, with normal bowel sounds, and no hepatosplenomegaly or ascites. (*Id.*) She had no edema, and an appropriate mood with a normal neurological exam. (*Id.*) The ALJ observed that the next examination did not occur until August 2021, more than 18 months after the date last insured. (Tr. 30; *see* Tr. 1133.) At this examination, Ms. Zingale was alert, oriented, and in no acute distress. (*Id.*) She had no scleral icterus or jaundice. (*Id.*) Her abdomen was soft and nontender, with normal bowel sounds, no hepatosplenomegaly, and no ascites. (*Id.*) She also had appropriate mood. (*Id.*)

The ALJ further noted that there was very limited evidence of treatment with Dr. Leisinger during the period at issue. (Tr. 30.) The ALJ stated "what limited evidence there was did not indicate significant examination findings." (*Id.*) For example, the ALJ observed "in the treatment notes with Dr. Leisinger from October of 2019, the claimant was noted to be in no acute distress, with normal abdominal examination, normal gait, and intact sensation." (Tr. 30; *see* Tr. 424.) The ALJ also noted that in December 2019, shortly before the date last insured, Ms. Zingale told Dr. Genther, her facial plastic surgeon, that overall her pain was controlled, but she had some residual numbness in her cheek, and tightness in her lip. (Tr. 21; *see* Tr. 418.) By May 2020 – five months after the date last insured – Ms. Zingale reported to Dr. Genther that she had no significant concerns since her May 11, 2020 surgery, her pain was under control, and she was overall happy with the results of her surgery. (Tr. 28; *see* Tr. 394.)

Ms. Zingale argues that she presented new and material evidence of her condition worsening. (ECF No. 6, PageID#2244.) To the extent she argues that her diagnosis of Sjogren's syndrome in 2022 establishes a worsening of her condition, this argument is unpersuasive. "[A] diagnosis alone does not establish that a condition is disabling, nor does it establish the extent, if any, of the functional limitations caused by the condition." *Baker v. Colvin*, No. 1:15-CV-00910, 2016 WL 4128435, at *13 (N.D. Ohio Aug. 3, 2016). As demonstrated above the ALJ complied with the requirement that he give a "fresh look to a new application containing new evidence" before ultimately concluding that the new evidence supported adopting the same RFC determination. *Earley*, 893 F.3d at 931. And substantial evidence supports the ALJ's decision. To the extent Ms. Zingale asserts a different conclusion could be reached, a reviewing court must defer to the ALJ's decision "even if there is substantial evidence that would have supported an opposite conclusion." *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

### 2. *The ALJ properly evaluated the medical opinions of Drs. Post, Leisinger, and Genther.*

Ms. Zingale challenges the ALJ's evaluation of the opinions of Drs. Post and Leisinger. She also appears in passing to challenge the ALJ's evaluation of Dr. Genther's letter.

At Step Four of the sequential evaluation, the ALJ must determine a claimant's RFC after considering all the medical and other evidence in the record. 20 C.F.R. § 404.1520(e). In doing so, the ALJ is required to "articulate how she considered the medical opinions and prior administrative medical findings." 20 C.F.R. § 404.1520c(a). At a minimum, the ALJ must explain how he considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss other factors. 20 C.F.R. § 404.1520c(b)(2). According to the regulations, the more consistent a medical opinion is with the evidence from other medical and nonmedical

sources, the more persuasive the medical opinion will be. This is the consistency standard. And the regulation specifies that the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion, the more persuasive the medical opinion will be. This is the supportability standard. *See* 20 C.F.R. § 404.1520(c)(1)-(2).

### a. Dr. Post's Opinions

Ms. Zingale argues that the ALJ erred in his evaluation of the persuasiveness of Dr. Post's opinions. Although it is unclear, Ms. Zingale appears to argue that the ALJ should have adopted Dr. Post's opinions because he stated that he had been treating Ms. Zingale since 2017, indicating that the limitations related to the period at issue. (*See* ECF No. 6, PageID#2247.)

It is questionable whether Ms. Zingale can establish that Dr. Post's opinions relate back to the prior period. An ALJ is required to consider a medical opinion issued after the date last insured only to the extent that the limitations provided in the opinion relate back to the period predating the date last insured. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849-50 (6th Cir. 2020). Generally, evidence post-dating the date last insured has little probative value "unless it illuminates the claimant's health before the insurance cut-off date." *Grisier v. Comm'r of Soc. Sec.*, 721 F. App'x 473, 477 (6th Cir. 2018). Where post-date-last-insured evidence establishes the claimant's impairments existed continuously and in the same degree as before the expiration of the claimant's date last insured, the evidence is relevant and should be considered. *Lowery v. Comm' r of Soc. Sec.*, 886 F. Supp. 2d 700, 717 n.8 (S.D. Ohio 2012).

Although Dr. Post noted that he had been treating Ms. Zingale since 2017, there is no explicit statement from Dr. Post in his opinions indicating that these opinions related back to the period before December 31, 2019. (Tr. 1138-41, 1837-42); *see Grisier v. Comm'r of Soc. Sec.*, 721

F. App'x 473, 477 (6th Cir. 2018) ("Post-date-last-insured medical evidence generally has little probative value unless it illuminates the claimant's health before the insurance cutoff date."). Thus, Ms. Zingale does not establish that it was unreasonable for the ALJ to conclude that there was no indication in Dr. Post's opinions that they related back to the period before December 31, 2019.

But even assuming these opinions related back to the period before December 31, 2019, the ALJ's decision is still supported by substantial evidence because the ALJ provided other reasons for why Dr. Post's opinions were not persuasive. (Tr. 34); *see Lane v. Comm'r of Soc. Sec.*, No. 3:20-cv-1105, 2021 WL 8342836, at *11 (N.D. Ohio May 24, 2021), *report and recommendation adopted*, 2023 WL 2733549 (N.D. Ohio Mar. 31, 2023) (finding that, assuming that the medical opinion actually related back to the period at issue, ALJ made no error where the ALJ also analyzed the opinion's supportability and consistency in accordance with SSA regulations); *Garcia v. Comm'r of Soc. Sec.*, No. 1:16 CV 2682, 2018 WL 838371, at *12 (N.D. Ohio Feb. 12, 2018) ("The undersigned finds, however, that even if this reason lacks support in the record, it is harmless because the ALJ's other reasons provide substantial evidence.").

For example, the ALJ here noted that Dr. Post's medical opinions were given largely in checkbox forms, with little or no explanation for the specific ratings provided. (Tr. 34; *see* Tr. 1138-41, 1837-42); *see, e.g.*, *Marks v. Comm'r of Soc. Sec.*, No. 1:16-CV-02848, 2018 WL 1801609, at *8 (N.D. Ohio Jan. 12, 2018), *report and recommendation adopted sub nom. Marks v. Comm'r of Soc. Sec. Admin.*, 2018 WL 739100 (N.D. Ohio Feb. 7, 2018) ("Numerous decisions have found that the use of checklist or check-the-box forms in which the doctor provides little or no accompanying explanation for the assessed limitations…are unsupported and, therefore, the ALJ may properly discount the treating source opinion.").

Moreover, the ALJ also noted that the "very significant limitations opined by Dr. Post were somewhat inconsistent with [Ms. Zingale's] treatment notes with Dr. Post during the period in question." (Tr. 34.) Specifically, the ALJ assessed the consistency of the limitations with evidence from the prior relevant period and postdating the current relevant period. For example, the ALJ noted that in March 2019, during the prior period of adjudication, Dr. Post stated that Ms. Zingale was alert, oriented, and in no acute distress. (Tr. 34; *see* Tr. 375.) Dr. Post also stated that Ms. Zingale had no scleral icterus or jaundice, and her abdomen was soft and non-tender, with normal bowel sounds, and no hepatosplenomegaly or ascites. (*Id.*) Dr. Post further observed that Ms. Zingale had mild tenderness in the right upper quadrant under her drain site but had no edema. (*Id.*) Ms. Zingale also had an appropriate mood and a normal neurological exam. (*Id.*)

The ALJ then explained that the findings from the next appointment with Dr. Post in September 2019 was also inconsistent with Dr. Post's opined limitations.[5] Although the appointment occurred during the prior period of adjudication, the ALJ explained that it was closer in time than the March 2019 examination. (*Id.*) The ALJ stated that Dr. Post noted that Ms. Zingale was "doing well," her rental function was good, and her liver tests were "much better." (Tr. 34; *see* Tr. 367, 369.) The ALJ observed that the physical examination findings were similar to the March 2019 examination, except at this appointment she had a normal abdominal exam, including that her abdomen was soft and non-tender, with normal bowel sounds, and no hepatosplenomegaly or ascites. (Tr. 34; *see* Tr. 368.)

---

[5] Earlier in her merits brief, Ms. Zingale asserts that Dr. Post examined her for abdominal cramping "[d]uring the relevant period." (ECF No. 6, PageID#2242.) This statement is inaccurate. Her appointment with Dr. Post took place on September 25, 2019, three weeks before Ms. Zingale's alleged disability onset date. Thus, this evidence pertains to the prior period. As the ALJ noted, "[Ms. Zingale] did not have any gastroenterology treatment with her long-time gastroenterologist, Dr. Post, during the period in question." (Tr. 28, 30; *see* Tr. 364-76.)

The ALJ also considered evidence that post-dated the relevant period. Specifically, the ALJ noted that in June 2020, six months after Ms. Zingale's date last insured, she had a telehealth appointment with Dr. Post. (Tr. 34; *see* Tr. 364-65.) Ms. Zingale told Dr. Post that she suffered a dog bite in late 2019 which required surgical intervention. (Tr. 364-65.) Regarding the impairments that Dr. Post was treating, the ALJ observed that Dr. Post noted Ms. Zingale was "doing well." (Tr. 34; *see* Tr. 364.)

The ALJ concluded that these three treatment notes/examinations were not indicative of the very significant and work-preclusive limitations opined by Dr. Post. (Tr. 3435.) Specifically, the ALJ noted that "[o]bjectively speaking, there was nothing in any of these three treatment notes indicating that the claimant had work-preclusive limitations at that time related to the impairments that Dr. Post was treating [Ms. Zingale] for." (*Id.*) Ms. Zingale fails to address the ALJ's rationale in this regard.

Ms. Zingale argues that the ALJ's decision was not supported by substantial evidence because the VE testified—in response to a hypothetical question posed by her counsel—that work would be eliminated if the individual was limited to simple, routine, and repetitive tasks and was off task 15% of the day. (ECF No. 6, PageID#2256.) It is unclear what evidence Ms. Zingale is relying upon to reach that conclusion (*id.*), but it appears that she may be referring to Dr. Post's opinion that she would be off-task 15 to 20% of the day (Tr. 1140-41, 1839-40). However, as discussed above, the ALJ found these opinions unpersuasive, and substantial evidence supports the ALJ's determination. (Tr. 34.) The ALJ was not required to include Dr. Post's limitations in the RFC because "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)

(internal citation omitted). Thus, Ms. Zingale does not establish the ALJ erred in his evaluation of Dr. Post's opinions.

### b.  Dr. Leisinger's Opinions

Ms. Zingale asserts that the ALJ erred in his evaluation of Dr. Leisinger's opinions. Specifically, she argues that even though the June 2019 opinion predated the period at issue, it related back to the relevant period because Dr. Leisinger reported that Ms. Zingale passed out while driving in October 2019. (ECF No. 6, PageID#2248-49.)

If Ms. Zingale is attempting to argue that Dr. Leisinger's October 2019 opinion that she could not drive for two weeks is evidence of disability, this argument is unpersuasive. That is so because the ALJ properly concluded that Dr. Leisinger's October 2019 opinion restricting Ms. Zingale to not driving for only two weeks was non-durational. "The short duration of the opinion is a reasonable basis for giving it 'little weight,' because even if it was adopted it could not establish 12-months of disability." *Miller v. Saul*, No. 1:19CV0288, 2019 WL 6493914, at *14 (N.D. Ohio Dec. 3, 2019); *see James v. Comm'r of Soc. Sec.*, No. 1:22-CV-1915, 2023 WL 4172932, at *10 (N.D. Ohio June 5, 2023) (finding ALJ did not err in finding medical opinions unpersuasive where they opined to limitations that lasted less than 12 months).[6] The ALJ also found that the October 2019 opinion "did not articulate [Ms. Zingale's] remaining abilities in functional terms." (Tr. 36.)

Ms. Zingale cites her subjective reports to Dr. Leisinger as support for the persuasiveness for the medical opinions. But Ms. Zingale's subjective complaints to Dr. Leisinger do not rise to the level of medical opinions merely because they are recorded in treatment notes. *Kurman v.*

---

[6] *See also Salamalekis v. Comm'r of Soc. Sec.*, 221 F.3d 828, 838 (6th Cir. 2000) ("Disability" means: "[the] inability to engage in any substantial gainful activity by reason of any medically determinably physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months) (citing 42 U.S.C. § 423(d)(1)(A)).

*Kijakazi*, No. 1:20-CV-01837, 2022 WL 1067568, at *9 (N.D. Ohio Jan. 13, 2022), *report and recommendation adopted sub nom. Kurman v. Comm'r of Soc. Sec.*, 2022 WL 765072 (N.D. Ohio Mar. 14, 2022). Thus, Ms. Zingale fails to establish any error in the ALJ's evaluation of Dr. Leisinger's opinions.

### c.  Dr. Genther's Letter

In a one-sentence footnote, Ms. Zingale notes that "[t]he ALJ found that the letter from Dr. Genther was not persuasive as it was written more than 18 months after the date last insured," but the letter related to the dog bite that occurred in September 2019. (ECF No. 6, PageID#2248 n.1.) To the extent Plaintiff seeks to challenge to the ALJ's evaluation of Dr. Genther's letter, this argument is waived. "Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997).

Regardless, the ALJ properly noted that to the extent Dr. Genther's letter could be construed as an opinion, Dr. Genther did not articulate any specific limitations that Ms. Zingale had resulting from the dog bite. (Tr. 32.) Rather, Dr. Genther stated that Ms. Zingale had some permanent numbness in her right medial cheek and upper lip, which the ALJ noted was a "recitation of [Ms. Zingale's] subjective symptoms, rather than an opinion indicating [her] remaining abilities in functional terms." (*Id.*) Significantly, the ALJ explained that "Dr. Genther did not cite to any specific objective findings or testing to support that the claimant's history of dog bite to her right face caused work-preclusive and/or disabling limitations." (Tr. 32-33.) Vagueness, or the failure to propose specific functional limitations, is a valid reason to discount a medical opinion. *See Quisenberry v. Comm'r of Soc. Sec.*, 757 F. App'x 422, 434 (6th Cir. 2018).

Specifically, these opinions lacked the specificity required for the ALJ to determine "the most [Ms. Zingale] can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). Thus, the ALJ's evaluation was not erroneous.

> **3.  *The ALJ properly considered Ms. Zingale's allegations of disabling fatigue and anxiety and appropriately determined that no limitations were warranted.***

Ms. Zingale contends that the ALJ erred when the RFC determination did not include limitations related to Ms. Zingale's fatigue and anxiety. (ECF No. 6, PageID#2250-53.) She cites to hearing testimony and statements to her treating provider that she asserts should have compelled the ALJ to find limitations related to her fatigue and anxiety. (*Id.* at PageID#2250-51.) Thus, she argues that the ALJ "failed to articulate any supportable rationale" for his SSR 16-3p findings. (*Id.* at PageID#2252.) This argument is not well-taken.

The ALJ is responsible for evaluating a claimant's subjective complaints. *See Siterlet v. Sec'y of Health & Human Servs*., 823 F.3d 918, 920 (6th Cir. 1987); *Rogers*, 486 F.3d at 248 (noting that "credibility determinations regarding subjective complaints rest with the ALJ"). In evaluating a claimant's symptoms, the ALJ must look to medical evidence, statements by the claimant, other information provided by medical sources, and any other relevant evidence on the record. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304. Beyond medical evidence, SSR 16-3p sets forth seven factors that the ALJ should consider: the claimant's daily activities; the location, duration, frequency, and intensity of symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; other treatment undertaken to relieve symptoms; other measures taken to relieve symptoms; and any other factors bearing on the limitations of the claimant to perform basic functions. *Id.*

The ALJ need not analyze all seven factors but should show that they considered the relevant evidence. *See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2017 WL 5180304, at *2.

The ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms ... and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10; *see also Felisky v. Bowen*, 35 F.2d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reason for doing so."). While a reviewing court gives deference to an ALJ's credibility determination, "the ALJ's credibility determination will not be upheld if it is unsupported by the record or insufficiently explained." *Carr v. Comm'r of Soc. Sec.*, No. 3:18CV1639, 2019 WL 2465273, at *10 (N.D. Ohio April 24, 2019) (citing *Rogers*, 486 F.3d at 248-49), *report and recommendation adopted*, 2019 WL 3752687 (N.D. Ohio Aug. 8, 2019).

Here, the ALJ provided a clear, discernible rationale for why Ms. Zingale's allegations of disabling anxiety and fatigue were inconsistent with the record and did not warrant limitations in the final RFC determination. Specifically, the ALJ based his RFC determination on several factors, including Ms. Zingale's treatment history, response to treatment, and objective findings, as well as the lack of durational opinions from acceptable medical sources indicating that she was disabled or that she had greater limitations prior to the date last insured. (Tr. 36-37.) The ALJ acknowledged

28

in the decision that Ms. Zingale's counsel argued that the injuries she sustained after the dog bite and motor vehicle accident caused a worsening of her mental health symptoms, including her anxiety. (Tr. 22; *see* Tr. 57-58, 66-67.) The ALJ also noted that Ms. Zingale's counsel argued that the evidence prior to the date last insured demonstrated that Ms. Zingale had significant fatigue and would be unable to sustain full time work. (Tr. 26; *see* Tr. 66-67.)

The ALJ addressed Ms. Zingale's anxiety. Specifically, the ALJ concluded that Ms. Zingale's allegations of disabling anxiety were contradictory to the examination findings, which showed that Ms. Zingale was alert, cooperative, pleasant, oriented, and in no acute distress. (Tr. 22; *see* Tr. 366, 368, 416, 421.); *see* 20 C.F.R. § 404.1529(c)(2); SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms…"). The ALJ also observed that the prior ALJ found Ms. Zingale's mental impairments not severe, and Ms. Zingale's treatment for mental health symptoms during the relevant period was largely unchanged and consisted entirely of medication therapy. (Tr. 21-22, 75-76.) The ALJ also noted that Ms. Zingale did not require any inpatient or emergency room treatment for her acute mental health symptoms. (Tr. 22, 29.) Indeed, Ms. Zingale acknowledged at the administrative hearing – approximately three years after the date last insured – that she had not required outpatient counseling services and instead sometimes spoke with a friend, who is a social worker, about her issues. (Tr. 56.) Finally, the ALJ noted that Ms. Zingale's treatment notes generally indicated that her symptoms were well controlled with conservative therapy, including medication therapy with Xanax. (Tr. 22; *see, e.g.*, Tr. 388, 410-11, 440, 545.)

The ALJ also considered Ms. Zingale's allegations of fatigue. Specifically, the ALJ noted that in June 2019 – during the prior period of adjudication – Ms. Zingale alleged persistent daily fatigue. (Tr. 26; *see* Tr. 442.) However, the ALJ noted that by November 2019, Ms. Zingale denied

symptoms of malaise and fatigue. (Tr. 26; *see* Tr. 419.) The ALJ also observed that in December 2019, Ms. Zingale reported that her symptoms of general malaise and fatigue were improved. (Tr. 27; *see* Tr. 415.) Thus, the ALJ reasonably concluded that the evidence did not support that Ms. Zingale had any worsening of her symptoms of fatigue related to her severe medically determinable impairments during the period at issue. (Tr. 27.)

Although Ms. Zingale alleges that the ALJ erred by failing to include limitations for her alleged anxiety and fatigue, an ALJ is not required to include limitations in the RFC that are not supported by the record. Indeed, "[i]t is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey*, 987 F.2d at 1235 (internal citation omitted); *see also Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (The ALJ is not required to incorporate a plaintiff's subjective complaints in hypothetical questions to the VE if the ALJ finds them to be unsupported by the record as a whole).

Here, as set forth above, the ALJ considered Ms. Zingale's fatigue allegations, found them inconsistent, and did not include an RFC limitation. "Declining to adopt a limitation in the RFC does not preclude an ALJ from considering the related symptom. Rather, it simply means that— as was the case here—the ALJ considered the symptom but determined that it did not warrant any additional limitations." *Flynn v. Comm'r of Soc. Sec.*, No. 1:22-CV-01886, 2023 WL 7155891, at *9 (N.D. Ohio Oct. 26, 2023). Accordingly, I recommend that the Court reject this assignment of error because it lacks merit.

### 4. *The ALJ properly concluded that Ms. Zingale could perform her past relevant work.*

Ms. Zingale argues that the ALJ's Step Four finding that she could perform her past relevant work as a foreign clerk was errorneous. (ECF No. 6, PageID#2254-56.) Specifically,

Ms. Zingale contends that her symptoms of fatigue would at times interfere with her ability to engage in substantial gainful activity on a sustained full-time basis. (*Id.* at PageID#2555.) This argument is not well-taken.

In support of her argument, Ms. Zingale cites her hearing testimony regarding her liver problems, anxiety, and fatigue. (*Id.* at PageID#2255-56.)  But an ALJ is not required to accept a claimant's subjective symptom complaints and may properly discount the claimant's testimony about [her] symptoms when it is inconsistent with objective medical and other evidence." *Smith v. Comm'r of Soc. Sec.*, No. 5:17-CV-2666, 2018 WL 6732875, at *14 (N.D. Ohio Nov. 15, 2018), *report and recommendation adopted sub nom. Smith v. Berryhill*¸ 2019 WL 696991 (N.D. Ohio Feb. 20, 2019). Ms. Zingale fails to establish that the ALJ's decision should be reversed merely because the ALJ did not credit her subjective complaints, especially when the ALJ assessed those complaints along with the objective medical evidence, treatment history, response to treatment, and medical opinions in crafting the RFC. (*See generally* Tr. 21-22, 29-37.)

Ms. Zingale asserts that her symptoms related to her hepatitis and cirrhosis were akin to the variability of symptoms with fibromyalgia, and that the ALJ erred in not considering the symptoms' variability. (ECF No. 6, PageID#2255.) But the ALJ's decision did consider the variability of her symptoms. As discussed above, the ALJ acknowledged that Ms. Zingale experienced fatigue. Yet Ms. Zingale inconsistently reported that she had no symptoms of malaise or fatigue or that her symptoms improved. (Tr. 27; *see* Tr. 415, 419.) The ALJ also noted that Ms. Zingale reported in December 2020 that her chronic fatigue symptoms were unchanged. (Tr. 27; *see* Tr. 540.) Based on this evidence, the ALJ ultimately concluded that Ms. Zingale did not have "any significant worsening of her symptoms of chronic daily fatigue related to her severe medically determinable physical impairments during the period in question." (Tr. 28.) The ALJ

also noted that Dr. Post opined in August 2021 that Ms. Zingale's symptoms were episodic and could include excessive fatigue. (Tr. 33; *see* Tr. 1138.) The ALJ, however, reasonably concluded that Dr. Post's opinion was unpersuasive because it was provided after the date last insured, largely in a checkbox form with little to no explanation provided for the opined limitations, and was somewhat inconsistent with his own treatment notes. (Tr. 34.)

Ms. Zingale primarily points to her own hearing testimony (*see* ECF No. 6, PageID#2256) as support for her argument that the ALJ's decision lacked the support of substantial evidence. But this approach does not satisfy the substantial evidence standard. That is because "[e]ven if evidence could support another conclusion, the decision of the [ALJ] must stand if the evidence could reasonably support the conclusion." *See Key*, 109 F.3d at 273. The Commissioner enjoys a "zone of choice" within which to decide cases without risking being second-guessed by a court. *Mullen*, 800 F.2d at 545 (citing *Baker v. Heckler*, 730 F.2d 1147, 1149 (8th Cir. 1984)). Thus, Ms. Zingale does not demonstrate error in the ALJ's evaluation of her fatigue symptoms.

## VI.    RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the Commissioner's final decision.

Dated: June 26, 2024                                              */s/ Jennifer Dowdell Armstrong*
                                                                                  Jennifer Dowdell Armstrong
                                                                                  U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all

parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a <u>de novo</u> determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *Berkshire v. Beauvais*, 928 F.3d 520, 530-531 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, at *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).